PuARSoi?, J.
 

 This case presents several new and very interesting questions; but, with the aid of the very full arguments with which we were favored, we have been enabled to arrive at conclusions that scorn to he warranted by-principle and general reasoning, and evidently meet the justice of the case.
 

 It is the settled policy of our State not to allow negroes to remain here after they are set free; hut the reasons upon -which this policy is based, by- no means make it necessary to hold that they have not a capacity to take property until after they have left the State. Their removing is net &
 
 *39
 
 condition precedent to emancipation, but is a condition subsequent : by the non-performance of which, they may forfeit their newly acquired freedom. Indeed, a capacity to take, so far from being opposed to the policy above alluded to, is, in most cases, necessary, as the means of giving effect to it, and of enabling the negroes with ease and comfort to provide a home for themselves, and get to it. The object is to make them go away, so as not to add to the number of free negroes, and the law imposes no restriction and continues no incapacity, except -so far as is necessary to accomplish that object. With this saving, the humanity of our laws strikes off his fetters at once, and says, go “enjoy life, liberty and the pursuit of happiness.”
 

 1. We are satisfied that Maria'll, at the time of her death, with the restrictions necessary to compel her to leave the State, was, to all intents and purposes, a free woman, and had capacity to take property and transmit it, by succession, to her personal representative.
 

 2. We are also satisfied that the children of Mariahwere entitled to call upon her administrrtor to make distribution among them, as her next of kin, according to the Statute.of Distributions; and we think it clear that all of her children are to be considered distributees, without reference to any peculiar state of things existing at the time they were begotten. Our law requires no solemnity or form in regard •to the marriage of slaves, and whether they “take up” with each other, by the express permission of their owners, ■or from a mere impulse of nature, in obedience to the command “multiply and replenish the earth,” cannot, in contemplation of law, make any sort of difference. In regard to slaves and free negroes, there is no necessity, growing out of grave considerations of public policy, for the adoption of the stern rule of the common law, “a bastard shall be deemed
 
 nullius films'"
 
 — to have no parent, and not icvon to be considered the-child of the mother who gave it
 
 *40
 
 birth. Therefore, we think that John, although the state' of things existing about the time of his conception was somewhat equivocal, was entitled to the sanie share of his mother’s estate as the re'st of her children.
 

 3. Although the rights of John are not at all affected by the state of things existing át the time he was begotten, yet
 
 the time of his birth
 
 has a very important bearing; for here the matter does not depend on the forms and ceremonies prescribed by Statute, but it grows out of the very iiature of things, and there is nothing to relieve him from the application of the general rule, (Co.
 
 hit.
 
 B. 2d ch, 2d sec. 188, 123 b,) to make á valid gift, there must be a donor, a donee, and a
 
 thing given.
 
 Fow, in regard to John, at the death of the testator, at which time the gift must take effect, if 'it takes effect at all, he was not
 
 in esse:
 
 he was not capable of taking, and so, although there was a donor and a thing given, yet, in regard to him, the gift fails, because there was no donee: he did not then exist. We are therefore satisfied that, although John was entitled to a derivative share, yet he was not entitled to an original share.
 

 PER OuRIam. Decree accordingly?